No. 16,715.

INDUSTRIAL COMMISSION ET AL. *v.* ALSPAUGH.

(236 P. [2d] 1081)

Decided October 1, 1951. Rehearing denied October 29, 1951.

Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. PETER L. DYE, Assistant, for plaintiff in error Industrial Commission.

Mr. HAROLD CLARK THOMPSON, Mr. LOUIS SCHIFF, for plaintiffs in error State Compensation Insurance Fund and Gardner-Denver Co.

Messrs. SHUTERAN, ROBINSON & HARRINGTON, Mr. RICHARD L. BANTA, JR., for defendant in error.

MR. CHIEF JUSTICE JACKSON delivered the opinion of the court.

THIS is a workman's compensation case involving the interpretation of certain sections of the Occupational Disease Disability Act of 1945. Under this act Laurel Jennings Alspaugh, an employee of the Gardner-Denver

Company, received an award dated March 8, 1948, which is explained by an order of the Industrial Commission's referee reading as follows: "The claimant herein was employed from July 1923 to January 9, 1947 by the respondent employer above named. During that period of time he was exposed to harmful concentration of silicon dioxide and this exposure was in the usual course of his employment and continued during the entire period of employment. His disablement began January 9, 1947. He is permanently disabled and further medical treatment will be of no benefit. His average weekly wages were $46.40. The maximum benefit to which he is entitled under the Occupational Disease Disability Act is $1,100.00.

"It is, therefore, ordered: That the respondents above named pay compensation to this claimant at $60.76 per month beginning January 9, 1947 and continuing monthly thereafter until the full sum of $1,100.00 shall have been paid."

This award was based on section 16, chapter 163, Session Laws of 1945, reading as follows: "The compensation benefits to which an employee or his dependents shall be entitled under this act for disability or death resulting from silicosis or asbestosis shall be the same as the compensation benefits to which an employee or his dependents shall be entitled for disability or death resulting from an occupational disease other than silicosis or asbestosis under the provisions of Section 14 and 15 of this act, *provided however,* that no compensation shall be payable for partial disability from silicosis or asbestosis and *provided further,* that the compensation payable for total disability from silicosis or asbestosis shall be subject to the *following limitations as to the total amounts payable during a transitory period* following the effective date of this act: If disablement occurs or, in case of no claim for prior disablement, if death occurs in the calendar month *in which this act becomes effective* [January 1946], *the total compensation for dis-*

*ability and death* shall not exceed the sum of five hundred dollars ($500). If disablement occurs or, in case of no claim for prior disablement, if death occurs during the next calendar month, *the total compensation for disability and death* shall not exceed the sum of five hundred and fifty dollars ($550). Thereafter, *the total amount of compensation for disability and death* shall increase at the rate of fifty dollars ($50) per month, the aggregate payable in each case to be limited according to the foregoing formula for the month in which disablement occurs or, in case of no claim for prior disablement, in which death occurs. *Such progressive increase in the limits upon the total amount of compensation payable for disability and death* shall continue until the limit upon compensation benefits specified in Sections 14 and 15 of this act for disability and death resulting from an occupational disease other than silicosis or asbestosis has been reached, and thereafter the total aggregate of compensation benefits for disability and death resulting from silicosis or asbestosis shall be the same as provided in Sections 14 and 15 of this act for disability and death resulting from an occupational disease other than silicosis or asbestosis." Italics supplied.

It appearing that Alspaugh's total disability occurred in January 1947, the benefits to which he was entit¹ed under the foregoing section were $500 for the month of January 1946, when the act became effective, and $50 for each month thereafter through January 1947, making $600 for the ensuing twelve months to be added to the $500 basic figure for the month of January 1946, or a total of $1,100. No appeal was taken from the referee's order of March 8, 1948, and it therefore became the final order of the commission. Final payment of the monthly benefits was made in June 1948 and approved by the commission.

Thereafter, Alspaugh received no further payments. He died January 17, 1951, and his widow in due time filed claim for compensation as a dependent. The State

Compensation Insurance Fund and the employer admitted that death had been caused by silicosis, but denied further liability other than the statutory funeral benefit of $125.00, on the ground that all liability had been discharged by the payments of benefits to Alspaugh under the commission's order of March 8, 1948. The award of the commission in this matter reads as follows:

"Laurel J. Alspaugh died on January 17, 1951 as a result of silicosis for which he received the maximum benefits to which he was entitled under the Colorado Occupational Disease Disability Act. Claimant now contends that by reason of Section 10 (f) and Section 15 of said law she is entitled to an additional $2,400 or $3,275. The Referee, however, is of the opinion that Section 16 of the Occupational Disease Disability Act is controlling and that under said Section claimant is not entitled to additional benefits for the reason that her husband received the maximum allowance for either death or permanent disability prior to his death.

"It is, therefore, ordered: That respondents pay to Mary E. Alspaugh the sum of $125 for and on account of funeral expense incurred and heretofore paid in full by her.

"It is further ordered: That claimant's claim for benefits in addition to the sum heretofore received by her husband be and the same is hereby denied and dismissed."

Claimant widow subsequently filed her complaint in the district court to set aside this adverse award and obtained favorable judgment vacating the commission's award and remanding the cause with directions to enter a new award in the sum of $3,275 with interest. The employer, the Industrial Commission, and the State Compensation Insurance Fund seek reversal of the district court's judgment. The trial court's figures were apparently reached by taking the sum of $4,375, the maximum recovery allowed under both sections 14 and 15 of the act, and deducting the $1,100 disability benefits

paid to deceased during his lifetime. It also appears from the brief of counsel for claimant that reliance for the position of the trial court was placed on section 10 of the act.

From the foregoing ·it will be noted that there is no dispute as to the facts in this case, the sole question being one of law, namely: the interpretation of the pertinent sections of the 1945 Occupational Disease Disability Act. We are of the opinion that the trial court erred in ignoring the provisions of section 16 and in basing its award on the above-mentioned sections of the act. Section 10 of the act, upon which counsel for claimant relies, does not provide any schedule of payments, but sets up limitations as to time within which only is the act applicable. Pertinent portions of section 14 read as follows: "Subject to the provisions of Section 17 of this act, an employee entitled to compensation under this act for disability resulting from an occupational disease *other than silicosis or asbestosis* shall be paid compensation during·the continuance of such disability, whether temporary or permanent, at the same weekly rate and in the same manner and to the same extent as in the case of temporary total disability resulting from an injury by accident under the Workmen's Compensation Act of Colorado, * * * *provided however,* that no compensation shall be payable for partial disability, and that the aggregate amount of payments for total disability shall in no event exceed the sum of four thousand three hundred and seventy-five dollars ($4,375.00)." Italics supplied.

Section 15, upon which counsel for claimant also relies, reads: "Subject to the provisions of Section 17 of this Act, the compensation benefits to which the dependents of an employee shall be entitled under this act for .death resulting from an occupational disease *other than silicosis or asbestosis* shall be in the aggregate not to exceed the difference between the total sums paid to the employee for total disability resulting from such disease as provided in Section 14 of this act and the sum

of four thousand three hundred and seventy-five dollars ($4,375.00), such compensation benefits to be paid in the same manner, to the same persons, at the same weekly rate, and to be subject to the same conditions as to termination or reduction as in the case, under the Workmen's Compensation Act of Colorado, of death resulting from an injury by accident." Italics supplied.

The maximum payments under sections 14 and 15, supra, were increased by Session Laws of 1951, chapter 220, page 548, effective March 8, 1951, to $8,764.00.

It would appear that deceased received disability benefits during his lifetime under section 16, which is the only paragraph expressly dealing with total disability resulting from silicosis. In that section there is shown a clear intent to initiate payments for total disability caused by silicosis at a lower rate than for other occupational diseases. As time moves on from the effective date of the act, these payments increase at the rate of $50.00 per month during what is described in section 16 as the "transitory period," which terminates when the payments reach the maximum allowed for other occupational diseases as provided in sections 14 and 15 of the act. Claimant's husband suffered total disability within the "transitory period." The date when disability first became total would seem to be determinative in computing the benefits. Only if death had occurred without any prior payments for total disability would the date of death become the effective date in computing the amount of benefit to be paid.

Acts 1939, Act No. 319, section 14 (b) (3) Arkansas, discloses a provision similar to section 16 of our statute, with the same reference to a "transitory period" in cases of compensation for disability from uncomplicated silicosis or asbestosis, with the same basic payment of $500 computed for the month in which the act became effective and the $50 per month additional payments to cover "compensation and death benefits." In *Fairbanks-Morse & Co. v. Tow*, 209 Ark. 815, 192 S.W. (2d) 545, 547, a

case involving the interpretation of that section, a judgment of the circuit court allowing a sum larger than that provided in the section dealing with the "transitory period" was reversed, and in so doing these words were used by the court in discussing the legislative intent: "What appears to have been in the legislative mind was that when the Act became effective many (or at least some) employees working under adverse conditions might be affected, or infected, with silicosis, but not to an extent discernible, or causing physical impairment. But the disease, being progressive, would, if the infection continued to prevail, assert itself within a few months, or a few years, depending upon the extent of exposure; hence it seems to have been thought proper to establish compensation of $500 as of the Act's effective date, with a 'transitory' period—a status changing with the addition of $50 monthly to the amount payable in compensation as time moved from December 5, 1940, and gradually supplemented the original item until disability occurs or a maximum of $7,000 compensation is reached. This construction relieved industry from paying compensation for certain indeterminate periods of time before the Act became a law, and during which silicosis was present in modified form, but had not reached a stage where diagnosis was possible, nor accompanied by conscious disability. Whatever the purpose may have been, it is certain that but $500 was payable December 5, 1940, and that the amount due claimant increased $50 per month thereafter."

Another statement covering the rationale for escalator clauses during transitory periods in payments for disability and death from silicosis is contained in Hobb's Workmen's Compensation Insurance (1939 ed.) page 238.

It is to be noted that in the case of other occupational diseases the legislature dealt with payments for disability in one section (14) and with death payments in a separate section (15); whereas, in dealing with a *transitory period* it lumped together in one section cases of

silicosis and asbestosis resulting in both total disability and death. We have italicized those words in section 16 which seem to us to indicate that the sums payable under that section are lump sums which include benefits covering both total disability and death. The very structure of the section following sections 14 and 15 would appear to confirm that construction.

If it had been the intention of the legislature to make the same provision for cases of total disability and death caused by silicosis as those caused by other occupational diseases, there would have been no need for it to have written a separate paragraph relating solely to compensation in silicosis and asbestosis cases. Section 16 must be given some meaning. If it does not relate to such a case as the instant one, it is difficult to see to what situation it could apply—and the brief of counsel for claimant does not provide an answer.

An interpretation which gives effect to all of the provisions of the statute, including section 16, appears to be the one adopted by the Industrial Commission.

The judgment of the trial court is reversed and the cause remanded with directions to reinstate the award of the Industrial Commission.